GRAFTON.

TILTON, *Ex'r*, v. THE AMERICAN BIBLE SOCIETY & a.

A legacy being given to "the Bible Society," and there being several Bible societies in existence when the will was made, the society intended by the testator may be identified by extraneous evidence.  And evidence that a contribution for one of them was annually taken in the church of which the testator was a member is admissible.

Whether a similar custom, in other churches of the same denomination, is too remote in place to justify an inference that it had come to his knowledge, is a question of fact to be determined at the trial term.

When a legatee does not demand his legacy because he has no knowledge of it, it is the duty of the executor, being aware of the reason, to give him information of the bequest.  If it is so doubtful to whom the legacy belongs that the executor cannot safely pay it, it is his duty to institute a legal proceeding without delay for a judicial decision of the question.  And although, in consequence of the executor's nonperformance of these duties, the legacy is not demanded, the legatee is entitled to interest after the end of a year from the testator's death.

BILL IN EQUITY, by the executor of the will of Joseph Tilton, for the interpretation of the third item of the will.  Facts found by the court.  The third item is, " I give and bequeath to the Bible Society, Foreign Mission Society, the Home Mission Society, and the Tract Society, five hundred dollars each."   There are no societies known by those names.   From 1851 until his death in 1864, the testator and his wife were members of the Congregational church and society at Littleton, and were regular attendants at the services and meetings of the church and society.   Subject to the plaintiff's exception, it was proved that during that time, at such meetings, annual contributions were taken for the New Hampshire Bible Society, the American Board of Commissioners for Foreign

Missions, the New Hampshire Home Missionary Society, and the American Tract Society (who are defendants claiming the legacies); that when such contributions were taken, they were called collections for the New Hampshire Bible Society, Foreign Missions, the New Hampshire Missionary Society, and the American Tract Society; and that during the same period a similar custom of contribution for the same societies prevailed in the other Congregational churches and societies of this state, the donees being usually designated as the Bible Society, Foreign Missions, Home Missions, and the Tract Society. There was no evidence that the testator had knowledge of the usage in other towns than Littleton, except his connection with the Littleton church and society. Upon these facts the court found that the societies for whom the annual contributions were taken were the societies which the testator intended to make legatees in the third item of his will.

When the will was proved, September 23, 1864, the plaintiff and his brother Franklin were appointed executors, and the duty of administration was performed by Franklin until his death in 1867, the plaintiff merely advising occasionally in regard to it. Since the death of Franklin, the plaintiff has been sole executor. Franklin consulted counsel as to the validity and construction of the third item of the will, and was advised it would not be safe to pay the legacies there mentioned. Neither of the executors ever gave the defendants any notice of the will. December 1, 1876, no demand having been made for the legacies, the plaintiff paid the balance then remaining in his hands to the residuary legatees, they agreeing to indemnify him. Up to that time the fund was invested and drawing interest. Neither of the legacies was claimed until October, 1878, when the New Hampshire Missionary Society demanded the legacy given to "the Home Mission Society." May 15, 1879, that society and the three other intended legatees demanded the legacies, and tendered receipts therefor, without interest. In June, 1879, they filed a petition in the probate court, praying that the plaintiff be ordered to file an inventory, settle his account, and pay them the legacies. This petition is still pending, the probate court doubting its power to determine to whom the legacies belong; and this bill is brought for a decision of that question. Franklin Tilton was a member of the Congregational church and society at Littleton from July, 1858, until his death, was a regular attendant at their meetings and took part therein, during a part of the time was superintendent of the Sabbath-school, and was familiar with the usages of the church and society. There was no concealment of the provisions of the will, and no bad faith on the part of the executors, unless the neglect to notify the defendants is to be regarded in law as a concealment. The societies claiming the legacies claim interest from the end of a year from the death of the testator. The residuary legatees contend that the bequests of the third item are void for uncertainty.

*Bingham, Mitchell & Batchellor,* for the plaintiff and heirs. There are no societies known by the names used by the testator. The defendant societies are neither named nor described in the will; and their names, or descriptions of them or their objects in the will, are essential. *Brewster* v. *McCall's Devisees,* 15 Conn. 274; *Trustees* v. *Peaslee,* 15 N. H. 317; *Button* v. *American Tract Society,* 23 Vt. 336; *Kurtz* v. *Hibner,* 55 Ill. 514—*S. C.,* and notes, 8 Am. Rep. 665; *Grimes' Executors* v. *Harmon,* 35 Ind. 198— *S. C.,* 9 Am. Rep. 690; *Fitzpatrick* v. *Fitzpatrick,* 36 Iowa 674— *S. C.,* 14 Am. Rep. 538. The extraneous evidence is incompetent. If any of it is admissible, it does not prove that any of the defendant societies were the legatees intended by the testator. The names in the third item of his will are not the names used in his church when contributions were taken.

*C. R. Morrison,* for the societies. I. The will gives $500 to each of four societies designated in the will as "the Bible Society," "the Foreign Mission Society," "the Home Mission Society," and "the Tract Society." There is no ambiguity upon the face of the will. For aught that appears from the will, each term perfectly describes a well known society, and from the will alone it would not appear that there is more than one society that could have been intended. But upon inquiry it is found that neither term exactly answers to any society by its corporate name, and that in respect to two of the societies the description of the legatee is partially correct of two different societies. There are two Bible societies and two Home Mission societies. As the difficulty arises from parol evidence introduced to apply the will to the objects of the testator's bounty, it can be obviated in the same way, unless the will is void for uncertainty. A devise is void for uncertainty only when, after a resort to oral proof, it still remains matter of mere conjecture what was intended by the instrument. *Society* v. *Hatch,* 48 N. H. 393, 397. A misdescription of the legatee does not render the legacy void, unless the ambiguity is such as to render it impossible, either from the will or otherwise, to ascertain who was intended as the object of the testator's bounty. *Smith* v. *Smith,* 4 Paige Ch. 271; *Society* v. *Hatch,* 48 N. H. 393, 397. An imperfect description of a person, natural or corporate, may be aided by parol evidence. 1 Red. Wills, c. 10, s. 15. For the purpose of applying the instrument to the facts, and determining what passes by it or who take an interest under it, proof is admissible of every material fact that will aid the court to identify the person or thing mentioned in the instrument, and place the court, whose province it is to declare the meaning of the words of the instrument, as near as may be in the situation of parties to it. *Shore* v. *Wilson,* 9 C. & F. 355; *Goodhue* v. *Clark,* 37 N. H. 525, 533.

Within this rule the evidence upon which the court found in our favor is competent, and like evidence has been received in many

cases. By showing that the testator had been for many years a member of the church at Littleton, and that this church and all other churches of the denomination had been accustomed to contribute to these societies, and, so far as appears, to no other of like character, the relation of the testator to these societies is established, and it becomes apparent that they are the ones intended. *Goodhue* v. *Clark*, 37 N. H. 525; *Trustees* v. *Peaslee*, 15 N. H. 317; *Button* v. *Tract Society*, 23 Vt. 336; *Dunham* v. *Averill*, 45 Conn. 61—*S. C.*, 29 Am. Rep. 642, 646, 661; *Ayers* v. *Weed*, 16 Conn. 291; *McAllister* v. *McAllister*, 46 Vt. 272; *Society's Appeal*, 30 Penn. St. 425; *Minot* v. *Boston Asylum*, 7 Met. 416; *Hospital* v. *Knight*, 11 E. L. & Eq. 191; *Smith* v. *First Church*, 26 N. J. Eq. 132; *Winslow* v. *Cummings*, 3 Cush. 358; *N. Y. Institution* v. *How's Executors*, 10 N. Y. 84; *Newport Mechanics Manf. Co.* v. *Starbird*, 10 N. H. 123; *Brewster* v. *McCall's Devisees*, 15 Conn. 275.

Within the same rule, evidence of the names or terms by which these societies were commonly designated in churches of the denomination was admissible. An individual or corporation, besides its true name, may have and take by a name of reputation. *Soc. Prop. Gospel* v. *Young*, 2 N. H. 310; *Minot* v. *Curtis*, 7 Mass. 442; *Smith* v. *Plank Road Co.*, 30 Ala. N. S. 650; *First Parish* v. *Cole*, 3 Pick. 232, 237; Pott. Corp. 18, s. 12; 10 Co. 57; Hob. 32; *Sumner* v. *Tyson*, 20 N. H. 384, 387; *Farnsworth* v. *Chase*, 19 N. H. 534, 541.

The corporation, whose full corporate name is The American Board of Commissioners for Foreign Missions, is designated in the will by the two last words of the name, "Foreign Mission," with the addition of the word "Society." The two words of the name which are used in the will are exactly descriptive of the design of the corporation, and they are the words by which the corporation was designated in taking up contributions. And the corporation is a society. There is no misdescription. The description is accurate so far as it goes, and there is enough of it, with the surrounding circumstances, to leave no doubt. The same corporation, in *Goodhue* v. *Clark*, took under the name of the Foreign Missionary Society, and in *Dunham* v. *Averill*, under the name of the American and Foreign Missionary Society, and in *Brewster* v. *McCall's Devisees*, as the Missionary Society of Foreign Missions.

The words "the Home Mission Society" are not a misdescription of the New Hampshire Missionary Society. Nor would they be a misdescription of the American Home Missionary Society. The words of the will in this respect are the same substantially as in *Goodhue* v. *Clark*, where Judge *Bell* said, in reference to these and other societies, that "The doubt as to the parties intended to take as legatees arises from the fact that there is no society bearing the precise names mentioned in the will, while there are several that have names somewhat like them, and that might be supposed

to be intended." No doubt was entertained but that the description was sufficient to designate with legal certainty either but for the existence of the other; and evidence was gone into of the extraneous facts, to ascertain the intention of the testator under the well settled rule. 1 Greenl. Evid. 290 ; 1 Red. Wills, *c.* 10, *s.* 3. Upon such evidence the legacy in *Goodhue* v. *Clark* was ordered to be paid to the American Home Missionary Society, for it was found to be the one intended. Here, by the same rule of law, the circumstances being different, it is found as a fact that the New Hampshire society is the one intended, and a like decree should follow in its favor. It is a Home Missionary society, having a separate corporate existence although auxiliary to the other, and is the one to which the testator contributed with the rest of his church.

The words " the Bible Society " are a correct description, so far as they go, of each of two societies,—the American Bible Society and the New Hampshire Bible Society; and no doubt either society would take under that description if there were no other Bible society to which the words could be referred. The case comes within the rules before stated, and the society intended has been found as a fact.

" The Tract Society " is sufficiently definite to enable the American Tract Society to take, it being proved that it was the one intended; and no other society has been suggested by the executor.

II. The general rule, by which the legatees in this case are entitled to interest after one year from the death of the testator, is well settled. *Rice* v. *Society*, 56 N. H. 191, 196, 216 ; *Loring* v. *Woodward*, 41 N. H. 391 ; *Russell* v. *Grinnell*, 105 Mass. 425. One of the executors, considering his perfect knowledge of the church collections, could have had no doubt of the societies actually intended by his father. He gave no notice to those societies so that they might make good their claim, and he asked no advice of the court. The funds were invested and drawing interest until December 6, 1876, when they were divided to the residuary legatees, of whom the surviving executor is one, holding one third. It does not appear whether the funds have been drawing interest since the division, but it may be presumed they have been " placed where they will do the most good." On the score of public policy, executors who neglect to give notice should never be excused from interest. In this case, if they did not know or believe that these societies could hold the legacies, they must have known that they were the ones intended. The fact that these societies did not demand interest cannot defeat their claim, since the money was not paid over. It was an offer to compromise not accepted, and neither party can be prejudiced by it.

*Bingham, Mitchell & Batchellor*, in reply. If either of the defendant societies is a legatee, it is not entitled to interest. A

demand of the legacy was necessary before interest could accrue. It was the duty of the claimants to ascertain, present, pursue, and establish their claims under the will, and not the duty of the executor to find and identify them, and establish their rights in the probate court. In general, no action can be maintained for a legacy, against an executor, without showing a demand. The reason is, that it is not the duty of the executor to seek the legatee, but it is enough if he pay when the legatee comes and demands payment. *Pickering* v. *Pickering*, 6 N. H. 120, 123 ; *Payne* v. *Smith*, 12 N. H. 37 ; *Tappan* v. *Tappan*, 30 N. H. 50, 70. Until demand is made, the executor cannot be reasonably said to be guilty of a breach of trust or a neglect of duty. *Prescott* v. *Parker*, 14 Mass. 429, 430.

The testator died in July, 1864. The first demand made by these societies was May 15, 1879, nearly fifteen years after his death. The public records of the probate court contained the will, and the defendants are charged with knowledge of their contents. When the legacies were demanded, interest was not claimed. Interest is allowed only upon an express contract to pay interest, or as damages for the wrongful detention of money after demand. Edw. Bills 678 ; *Livermore* v. *Rand*, 26 N. H. 91 ; *Abbott* v. *Wilmot*, 22 Vt. 437. Here was no wrongful detention until after demand ; and no interest in any event can be allowed before May 15, 1879.

Doe, C. J. There is no patent ambiguity. If there had been but one Bible society, the bequest to "the Bible Society" would not have been void for uncertainty. The will would not have made it doubtful what Bible society the testator meant. Extraneous evidence disproving the existence of more than one such society would have had the same effect as similar evidence in relation to an individual described in the will, by name or otherwise, as a legatee. The existence of more than one Bible society presents a latent ambiguity. The question is not whether a plea of misnomer of a party is sustained by proof, nor whether there is a variance between the evidence and the name of a third person set forth in pleading. The question is not by what name any Bible society was known to others, but which one of several Bible societies was intended by the testator. The testamentary name, or other testamentary description of a legatee (whether an individual or a society, incorporated or unincorporated), is evidence of the testator's intention. Evidence showing what name was given to a Bible society in its charter, what name it used or recognized as its own, and by what name or names it was known to others, tends to prove a name by which the legatee might have been known to the testator, and a name which he might have used in his will to express his intention. But the society intended by him, and identified by competent evidence, is the legatee, by whatever name described in the will, and

notwithstanding any other name or names by which it may have been invariably or usually known to others.    The New Hampshire Bible Society being pointed out by such terms in the will as he would be likely to use in describing that society, being the one he would probably mean when he spoke of "the Bible Society," and being found, upon competent evidence, to be the society intended by him, the law does not withhold the legacy from the donee intended by him, and does not give it to those who he meant should not have it.    A person known to a testator as A B, and to all others as C D, may take a legacy given to A B.

Samuel may take a legacy given to Edward, the testator having been in the habit of calling him Edward.    *Parsons* v. *Parsons*, 1 Ves., Jr., 266.    A bequest was made to "Robert Careless, my nephew."    The testator had two nephews of that name.    With one of them he was intimately acquainted ; the other was very little known to him, and it was uncertain whether he knew that the Christian name of the latter was Robert.    The presumption was in favor of the former.    *Careless* v. *Careless*, 19 Ves., 601, 505.    If a man has two sons, both baptized by the name of John, and conceiving that the elder (who has been long absent) is dead, devises land to his son John, and in truth the elder is living, the ambiguity may be resolved in favor of the younger, by evidence that the testator thought the elder was dead.    *Lord Cheyney's Case*, 5 Rep. 68.    In *American Tract Society* v. *De Witt*, 9 Allen 447, 451, the American Tract Society was a legatee.    There were two societies of that name, one incorporated in New York, and the other in Massachusetts.    There was evidence tending to prove that the Massachusetts society was incorporated many years before the other, had held public anniversary meetings, maintained a place of business in Boston, and constantly solicited and received contributions in the churches and from individuals throughout the larger part of Massachusetts, and in other New England states.    The testator was a citizen of Massachusetts, residing there at the time of his death, and there was evidence tending to prove he was aware of the existence of that society and had contributed to its funds. The court inferred he intended his bequest for the domestic corporation, and not for the foreign one, of whose existence there was no certain evidence that he had any knowledge.    If it had been certain that he had no knowledge of any other tract society than the one chartered in Massachusetts, his intention would have been as clear as in a bequest to his son John when he had two living sons of that name, one of whom he believed to be dead.

In this case, if, of several Bible societies, only one had been known to the testator, his knowledge and want of knowledge on that subject would have been as conclusive evidence of his intention as the existence of no more than one.    And as a bequest to A B may be presumed to have been intended for a person of that name with whom the testator lived on intimate terms, rather

than for a person of the same name who was but little known to him, so it may be inferred that this testator meant the Bible society for which contributions were regularly solicited in, and with the license and approval of, the religious associations of which he was a member, rather than any other Bible society not thus commended to him as a preferred object of the charity of his church, not specially brought to his consideration, and not shown to have been within his knowledge. In like manner a latent ambiguity as to other legatees may be explained. If there were but one Foreign Mission society, one Home Mission society, and one Tract society, they would have been the ones intended by the testator. If there were more than one of either kind, the one intended by him might be identified by extraneous evidence. *Bartlett* v. *Remington,* 59 N. H. 364.

There was a custom of contribution in other Congregational churches than that at Littleton, of which the testator was a member. Whether it was too remote in place to justify an inference that it had come to his knowledge, was a question of fact to be determined at the trial term. *State* v. *Railroad,* 58 N. H. 410 ; *Amoskeag Co.* v. *Head,* 59 N. H. 332, 337.

The executors were fiduciary representatives, holding the estate in trust, and bound to exercise reasonable and impartial care in protecting the rights of all the legatees. For many years they knew that the societies were not aware of the bequests made to them ; and it was their duty to give the societies the information which was manifestly needed, and without which the third item of the will could not be executed. It was their duty to pay the legacies, or bring this bill without delay. Their obligation was to promptly execute the entire will of which they were executors, and not to defeat the third item by inaction. They were protected against an unnecessary and oppressive suit brought for a legacy, without such a demand as would give them a reasonable opportunity to perform their duty of payment. But this protection did not authorize them to sacrifice the rights of a legatee by such silence as would prevent a demand being made. By such silence they could not transfer the income of the trust fund from its equitable owners to others who had no title to it.

The societies intended by the testator are entitled to the legacies and the interest, which they claim. On what ground ,the other legatees are entitled to one year's income of the legacies given to the societies and held in trust by the executors for the societies, and on what ground the other legatees are entitled to any excess of subsequent income produced by the property of the societies above the interest which is claimed (if there was any such excess), are questions not raised by either party.

*Case discharged.*

STANLEY, J., did not sit : the others concurred.