SMITH & a., Ex'rs, v. KIMBALL & a.

It is an established principle, applicable to wills as well as to contracts and conveyances, that parol evidence is admissible to remove latent ambiguities; and when there is no person or corporation in existence precisely answering to the name or description in the will, parol evidence may be given to ascertain who were intended by the testator.

A misnomer or misdescription of a legatee or devisee, whether a natural person or a corporation, will not invalidate the provision or defeat the intention of the testator, if, either from the will itself or from evidence *dehors* the will, the object of the testator's bounty can be ascertained.

BILL IN EQUITY, by the executors of the will of James Boyd, late of Antrim, deceased, praying advice and direction as to the proper construction of the will of the deceased and their duty as executors.

The will is dated April 2, 1880. The testator died April 18, 1880. In the will the testator gave certain annuities to his nephews and nieces, and certain specific sums to certain charitable institutions. Among other things the will contains the following bequests: "I give and bequeath unto the Meredith Institution,

located at Meredith, N. H., the sum of five hundred dollars, one hundred dollars of said sum to be paid in one year after my decease, and one hundred dollars to be paid annually after said first year, till said five hundred dollars has all been paid, said sum to be used for the purpose of educating young men for the ministry; but if said institution shall cease to exist before the whole of said five hundred dollars has been paid, then the balance of said five hundred dollars, not already paid, shall be withheld by my trustees and used as a part of the residuary of my property." The following is the residuary clause: "I give, bequeath and devise all the rest, residue and remainder of my property, of whatever description and wheresoever situate, unto the New Hampshire Bible Society, The Presbyterian Board of Foreign Missions, The Presbyterian Board of Home Missions, The Presbyterian Committee of Missions for Freedmen, The Meredith Institution and the Orphans' Home, to be divided equally between them."

Facts found by the court. The Kimball Union Academy, located at the village of Meriden in Plainfield, in the county of Sullivan, claims the specific and residuary bequests to the Meredith Institution. The heirs-at-law of the testator claim that this bequest is void, and that these bequests to the Meredith Institution should be divided among them. All the legatees under the will and the heirs-at-law were made parties. None of the legatees, except such as were heirs-at-law, appeared to contest the claim of the academy.

Subject to exception by the heirs, the court admitted the charter of the academy. Among other provisions it contains the following: "Whereas, Charles Marsh . . . have represented that it is in contemplation to establish at Plainfield, in this state, a seminary, designed to assist in the education of poor and pious young men for the gospel ministry and also to make a provision for the education of such others as may be admitted upon terms to pay a reasonable sum for their tuition."

"Section 1. Be it enacted, &c., That there may be established at such place within the town of Plainfield, in the county of Cheshire, in this state, as the trustees hereinafter named shall judge to be most suitable, a Seminary for the purpose of assisting in the education of poor and pious young men for the gospel ministry and such others of sufficient ability who may be admitted by the trustees, subject to pay for their tuition, to be denominated the Union Academy, in which may be taught all branches of education necessary for preparing youth for entering any of the three lower classes in the colleges in the United States."

"Section 5. And be it further enacted, That the trustees and instructors of the Union Academy shall be professors of the Christian religion and shall each be a regular member of some Congregational or Presbyterian church."

Subject to the same exception, the court admitted evidence tending to show that the deceased was a member of the Presbyterian church in Antrim for many years; that he was a deacon of that church for twenty or twenty-five years; that a cousin of his, with whom he was on terms of intimacy, was a teacher in the academy from 1840 to 1855, and from 1869 to 1873; that this cousin visited the testator as often as once a year, and talked with him about the academy; that the testator frequently had the catalogues of the academy; that two young men who lived in Antrim, one of them in his family for a time, and the other, a son of a person who was a long time a servant of the testator, fitted for college there; that a nephew of the testator was fitted for college there; that other relatives of the testator also attended school there; that that was the school which attracted many scholars from Antrim; that the testator was very intimate with Rev. John M. Whiton, for forty-four years Presbyterian minister at Antrim; that his son-in-law, with whom the testator was well acquainted, was, for many years, principal of the academy; that Mr. Whiton had two granddaughters educated there, of which fact the testator well knew; that in 1875 the matter of a bequest to the academy was urged upon the attention of the testator, and that in 1876 and 1877 it was feared that the academy must fail from want of funds, and there was talk of changing its location, which was well known to the testator when he executed his will.

Smith, one of the plaintiffs, subject to exception by the heirs, testified that he drew the will in question, and also a prior will in 1877; that both contained the bequest in question; that on both occasions the testator gave as a reason for this bequest that he had relatives who had attended school there, and a relative who had been a teacher there, and there were others who had attended school there from Antrim; that the testator gave him minutes from which to draw the will; that the place was left out of the minutes, being stated as for the Meredith Institution, and, in reply to a question by the witness, the testator gave the place where located as Meredith, N. H. There is no institution in Meredith, N. H., capable of taking the bequests in question, nor any there or elsewhere, so far as appeared on the trial, except the Kimball Union Academy, which claims to be the intended object of those bequests.

By the charter of the academy the trustees were empowered "once to alter the name of the Union Academy by prefixing thereto the name of the principal donor;" and, in accordance with this authority, they prefixed the name "Kimball," for the reason that Daniel Kimball, of Plainfield, N. H., by his will, made September 7, 1816, gave to the academy a large bequest as a permanent fund, the larger portion of the interest thereon "to be appropriated for the instruction of pious young men for the ministry." A copy of the will of Daniel Kimball was received in evidence, subject to exception by the heirs.

On the foregoing evidence the court find that the testator had in mind "Kimball Union Academy" when he executed his will, and intended the bequests therein to the "Meredith Institution located at Meredith, N. H.," for "Kimball Union Academy located at the village of Meriden, in Plainfield, in the county of Sullivan," and the court order that the plaintiffs should be advised accordingly.

*E. M. Smith,* for the executors.

*A. S. Wait,* for the claimant. In this case, the bequests in question being to "the Meredith Institution located at Meredith, N. H.," and there being no institution in the town of Meredith capable of taking them, nor any there or elsewhere, except the Kimball Union Academy located in the village of Meriden, which claims to be the intended object of these bequests, the latter institution claims to be the one intended by the testator; and the question is, whether extrinsic evidence can be resorted to in aid of the interpretation in support of this claim, and, if so, whether the evidence offered is competent for that purpose.

I submit that this will presents a clear case of a latent ambiguity, and, as such, open to parol proof in explanation. So far as appears upon the face of the will taken by itself, there is nothing apparently ambiguous about it. It is only when the object of the testator's bounty is sought that the difficulty becomes developed. The question being raised solely by evidence *dehors* the will, it may be explained by the same species of evidence. This being one of the most elementary doctrines of the law, does not require to be supported by the citation of authorities: that this is a case within the rule seems to me equally plain with the rule itself. But there are abundant authorities directly applying to the case now in hand.

The cases of *Masters* v. *Masters,* 1 P. Wms. 421, *S. C.,* 2 Eq. Ca. Abr. 366, *Bradwin* v. *Harpur,* Amb. 374, and *Beaumont* v. *Fell,* 2 P. Wms. 141, 142, *S. C.,* 2 Eq. Ca. Abr. 366, are strong and direct, and, unless their authority is to be denied, are decisive in favor of the reception of extrinsic evidence for the purpose here claimed.

The reasoning of the judges in *Thomas* v. *Thomas,* 6 T. R. 671, is strongly in the same direction. *Le Chevalier* v. *Huthwaite,* 3 B. & A. 632, *Lee* v. *Pain,* 4 Hare 251, 253, *Blundell* v. *Gladstone,* 1 Ph. Ch. 279, *Doe* v. *Allen,* 12 Ad. & E. 451, *Charter* v. *Charter,* L. R. 2 Pro. & Div. 315, *S. C.,* L. R. 7 H. L. 364, sustain the earlier cases, and would seem to settle the law in England in this direction. *Hiscocks* v. *Hiscocks,* 5 M. & W. 363, is not in conflict with this view, but altogether sustains it.

The fifth proposition of Sir James Wigram, in his book on Extrinsic Evidence, is,—"For the purpose of determining the object

of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will. The same (it is conceived) is true of every other disputed point respecting which it can be shown that a knowledge of extrinsic facts can, in any way, be made ancillary to the right interpretation of a testator's words."

Says Prof. Greenleaf (1 Ev., s. 287),—"In the simplest case that can be put, namely, that of an instrument appearing on the face of it to be perfectly intelligible, inquiry must be made for a subject-matter to satisfy the description." See, also, note of *Redfield*, J., to *Kurtz* v. *Hibner*, 10 Am. Law Reg. N. S. 97, and cases by him cited; also note to *S. C.*, 8 Am. Rep. 669.

From the very nature of the case, no will can be made so plain that the object of the testator's bounty must not be ascertained by means of evidence *dehors* the will. The discovery may, indeed, be a work of more or less difficulty in a given case; but in all cases the point to be ascertained is, the intended object described by the language used. That this may be more difficult in one case than in another cannot change the principle; the difficulty is in degree only and not in kind, incidental and not radical or fundamental. Again, says Greenleaf, in the same section above cited,—"The object . . . is . . . to discover the intention. And to do this, the court may . . . put themselves in the place of the party, and then see how the terms of the instrument affect the property or subject-matter." To the same effect is the opinion of the court in *Tilton* v. *Tilton*, 32 N. H. 263. *Second Cong. Society in Hopkinton* v. *The First*, 14 N. H. 315, and *Trustees* v. *Peaslee*, 15 N. H. 317, support the same view. *Button* v. *Tract Society*, 23 Vt. 336, seems to be a case very directly in point.

I contend, therefore, that both upon principle and authority extrinsic evidence is receivable in a case like the present.

*G. B. French* and *A. F. Stevens*, for the heirs. As there not only never existed an Institution in Meredith, but nowhere else in this state, having a name or description in any part or particular like the above devisee, this devise is void, for the cases of latent ambiguity where extrinsic evidence can be resorted to are those where there is something in the name or description upon which to hang the extraneous evidence, be that something ever so fractional or incomplete, not cases where the name, location, and description are all to be engrafted on the will, and the words of the will blotted out because furnishing no clue whatever, as in

this case. And in support of this we would cite the seventh proposition of Sir James Wigram, which accompanies the fifth proposition cited by counsel for the academy in his brief, and limits the meaning somewhat of that proposition. These may all be found in 1 Gr. Ev., s. 287, n. 1. To give to the fifth proposition the scope that would embrace all the evidence offered in this case, would make the seventh proposition an unmeaning and surplus proposition. 1 Gr. Ev., ss. 289, 290, 291; *Hiscocks* v. *Hiscocks*, 5 M. & W. 363, 367.

In the above case, Lord *Abinger* said,—"Now, there is but one case in which it appears to us that this sort of evidence of intention can properly be admitted, and that is, where the meaning of the testator's words is neither ambiguous nor obscure, and where the devise is on the face of it perfect and intelligible, but, from some of the circumstances admitted in proof, an ambiguity arises as to which of the two or more things, or which of the two or more persons (each answering the words in the will), the testator intended to express. . . . It appears to us, that in all other cases parol evidence of what was the testator's intention ought to be excluded, upon this plain ground, that his will ought to be made in writing; and if his intention cannot be made to appear by the writing, explained by circumstances, there is no will." Prof. Greenleaf adopts this view as the settled doctrine. 1 Gr. Ev., s. 290.

"But where the name is wholly mistaken, although the name and description, in connection with surrounding circumstances, render the identity of the person, or thing, reasonably clear, the court cannot undertake to foist a new provision into the will." 1 Red. Wills, c. 10, s. 41, pl. 15, c.; p. 596, c. 10, par. 3; id., c. 10, s. 41, pl. 2, n. 3; id., c. 10, s. 40, pl. 4 and pl. 2, n. z; *Andrews* v. *Dobson*, 1 Cox 425; *In re The Clergy Society*, 2 K. & J. 615; *Rives's Case*, 1 Atk. 410; *Miller* v. *Travers*, 8 Bing. 244; *Hunt* v. *Hort*, 3 Br. Ch. 311; *Bennett* v. *Marshall*, 2 K. & J. 740; *Goode* v. *Goode*, 22 Mo. 518; *Stringer* v. *Gardiner*, 5 Jur. N. S. 260.

Certain cases have gone to extremes in this matter, but they have either been overruled or ignored as authority. Such are *Beaumont* v. *Fell*, 2 P. Wms. 141, cited by counsel for academy, and *Masters* v. *Masters*, 1 P. Wms. 425. See 1 Red. Wills, c. 10, s. 41, pl. 19, n. 24; and id., c. 10, s. 41, p. 603, n. 12; id., pl. 13, n. 14; id., pl. 24; Jar. Wills (5th ed. Big.), p. 441, c. 13, n. r; 5 H. L. Cas. 168.

"It seems to be settled, by all the best considered cases, that extrinsic evidence cannot, as a general thing, be received to support the claim of one to whom no part of the written description applies." *Janey* v. *Latane*, 4 Leigh 351; *Telfair* v. *Howe*, 3 Rich. Eq. Cas. 235; *Carter* v. *Balfour*, 19 Ala. 814.

The mistakes of the scrivener, whereby something is omitted that the testator intended should be in his will, cannot be rectified however important that omission be, and however positive the

belief of the testator that it was inserted. This seems hard, the testator being in no wise in fault. Much less are the mistakes of the testator himself to be rectified to the extent of interpolating omissions, or, what amounts substantially to the same thing, striking out a whole name and description, and inserting another having no single likeness to what is erased. 1 Red. Wills, *c.* 10, *s.* 39, *pl.* 20, and *s.* 40, *pl.* 15; *Yates* v. *Cole,* 1 Jones Eq. 110 ; *Bennett* v. *Marshall,* 2 K. & J. 740 ; *Goode* v. *Goode,* 22 Mo. 518 ; *Davy in re,* 5 Jur. N. S. 252 ; 1 Jar. Wills (5th. ed. Big.) 412, 442, *c.* 13, and cases cited.

BLODGETT, J.  The case presented by the facts is plainly one of a latent ambiguity arising from the misdescription of the name of a legatee ; hence the evidence taken at the trial was properly received to remove the ambiguity. Indeed, it is familiar law, and sustained by nearly all the authorities, that a misnomer or misdescription of the legatee or devisee will not invalidate the provision or defeat the testator's intention, if, either from the will itself or evidence *dehors* the will, the object of the testator's bounty can be ascertained; nor is there any principle better settled than that a latent ambiguity in any written instrument is open to explanation and removal by parol evidence. The decisions in other jurisdictions involving these general principles are too numerous for citation; and for recent confirmatory decisions in this state, see *Society* v. *Hatch,* 48 N. H. 393, 397, *Bartlett* v. *Remington,* 59 N. H. 364, 365, and *Tilton* v. *Society,* 60 N. H. 377–384.

The order made at the trial term· is affirmed.

*Exceptions overruled.*

STANLEY, J., did not sit; the others concurred.