BILLS, *Ex'r, v.* PUTNAM *& a.*

Where it clearly appears by a will that the intention of the testator was to give all his property remaining after the discharge of certain legacies in equal shares to several persons named, that intention will not be defeated because, after making the will, not intending to change the disposition, he changed the form of the residue from real to personal estate.

BILL IN EQUITY, for the construction of a will. Facts found by a referee. Lucy C. Bills died Sept. 28, 1882, leaving a will dated April 14, 1865, whereby she gave to her two daughters all her "wearing apparel, household furniture, and personal property of every name, nature, and description, to be equally divided between them;" to two grandsons $200 each, and to a son $5.00,

with a residuary clause as follows : "And as to the rest, residue and remainder of my property, it now being in real estate, I give, bequeath and devise to my son, Jabez F. Bills, my daughters, Lucy A. M. Putnam, Betsey J. Patterson and my grandson, George F. Bills—to be equally divided among the four; and for the better settling and dividing of said property among the devisees, I do authorize and empower my executor"—"to sell at public auction or private sale as he may think best, together or in such parcels as he may think best, all the real estate of which I may die seized, and from the proceeds thereof pay all my funeral charges, just debts and erect suitable grave stones at my grave, divide my personal property between my two daughters as above mentioned, pay the money legacies to the persons as above mentioned, pay all the necessary expenses of administering, selling, disposing of, deeding and conveying said real estate."

There was a codicil, dated Jan. 7, 1878, whereby the legacy to one of the grandsons was reduced to $50, and to the other wholly revoked. At the time the will was made the testatrix owned real estate worth about $2,900, but no personal property, aside from wearing apparel and household furniture, except one promissory note for about $40. Before her death she sold a large part of her real estate and invested the proceeds, which have come to the hands of the plaintiff in promissory notes and deposits in savings-banks.

From the terms of the will and the foregoing facts, the referee found that the intention of the testatrix was to give her two daughters, Lucy A. M. Putnam and Betsey J. Patterson, all the wearing apparel, household furniture, and other personal property of like nature which she possessed at her decease, but not the money she had on hand or invested; and to her residuary legatees all the balance of her estate after paying therefrom the money legacies mentioned in the will and codicil, her debts, expenses of administration, etc., and held that the balance of money now in the plaintiff's hands as executor should be divided equally between Jabez F. Bills, Lucy A. M. Putnam, Betsey J. Patterson, and George F. Bills.

*C. W. Hoitt*, for the defendants. The finding of the referee on the facts presented was incorrect. First, the will takes effect at the decease of testatrix and not at date of will. *Loveren* v. *Lamprey*, 22 N. H. 434; *Brimmer* v. *Sohier*, 1 Cush. 133; *Wetmore* v. *Parker*, 52 N. Y. 463; *Canfield* v. *Bostwick*, 21 Conn. 550; *Morey* v. *Sohier*, 63 N. H. 511; *Wakefield* v. *Phelps*, 37 N. H. 295; *Perkins* v. *George*, 45 N. H. 453. At her decease she had some $800 worth of real estate, from the proceeds of which the executor could pay legacies and comply fully with the terms of the will. It had not become inoperative. She had both real and personal estate. The will sets forth that the testatrix empowers

the executor to sell and dispose of the real estate from which she directs the money legacies, expenses of administering, &c., shall be paid, to wit, "the real estate of which I may die seized," and then directs a division of the personal property "as above mentioned." Can anything be more clear than this, that the testatrix had considered the matter of selling and disposing of her property or a portion thereof during her lifetime, and that she understood and intended the real estate which she owned at her decease would be divided amongst the four, and not the real estate owned at the date of the will? A testatrix is not supposed to be ignorant of the state of her property, unless it appears upon the will to be so. *Wallace* v. *Wallace*, 23 N. H. 156 ; *Hall* v. *Smith*, 61 N. H. 144; *Hotham* v. *Sutton*, 15 Ves. 328. By this will there is no evidence of such ignorance, but by the will and codicil it would appear that the testatrix did fully understand as to her property and the manner of division as intended by her. If she did know as to the condition, she also knew that by each sale her will was so far modified or revoked, and knowing this it showed a clear intention on her part to so revoke it. *Hoitt* v. *Hoitt*, 63 N. H. 497.

Again: If the will is to take effect at its date, the personal property she then had can only be divided, and that which she then had, but did not possess at her decease, according to the reasoning of the referee, should be made up to the two daughters, thus presenting another difficulty. Surely the same rule ought to apply to personal property as to real estate ; or at least if one part of the will takes effect from date, the whole ought.

"Conveying a part of the estate upon which the will would otherwise operate indicates a change of purpose in the testator as to that part, but suffering the will to remain uncancelled evinces that his intention is unchanged with respect to other property bequeathed or devised therein." *Hoitt* v. *Hoitt, supra,* quoting *Weston*, J., in *Carter* v. *Thomas*, 4 Greenl. 344. Again: In *Lee, app't*, 18 Pick. 293, the court, *Shaw*, C. J., suggests that by operation of law the alienation of real estate operates as a revocation of the will *pro tanto*, and by such a sale we may infer a change of intention. A part of the estate, as before suggested, was here conveyed, thus showing a change of purpose, unless there is some other feature in the will to overcome this. No such feature is reported by the referee, and no such appeared at the hearing : hence the referee was incorrect as to this point in his findings. This will was amended in January, 1878, by a codicil duly executed, to which no objection has or could be made. A codicil is a supplement to a will, by which the will is either enlarged or restricted. 1 Jarm. Wills 27, *n.*

In construing a will with codicils, all the papers are to be taken together as parts of one instrument. *Negley* v. *Gard*, 20 Ohio 310 ; G. L., *c.* 1, *s.* 21; 1 Jarm. Wills 174; 1 Wms. Ex. 175;

*Haven* v. *Foster*, 14 Pick. 543; *Van Cortlandt* v. *Kip*, 1 Hill 591. Now if this will and codicil are to be taken together, then the codicil cannot be carried back to the date of the will, but on the contrary, the will must be brought down to the date of the codicil; and this being so, the position taken by the plaintiff being also correct that the will shall speak from its date, then the property must be divided, as we claim, as the property of the deceased was the same, so far as real estate is concerned, as at the date of codicil. Now, does the execution of the codicil have that effect? Does it serve to republish a will? Our answer is yes, and the reasons for such decision are as follows: "Republication is of two kinds, express and constructive. Constructive republication takes place where a testator for some other purpose makes a codicil to his will, in which case the effect of the codicil, if not neutralized by internal evidence of a contrary intention, is to republish the will." Wms Ex. 246, *n*. 1. Is there any internal evidence of a contrary intention? We fail to find such.

In *Goodtitle* v. *Meredith*, 2 M. & S. 5, 13, the judges concurred in what was said by Lord *Ellenborough*, Ch. J., viz., "What the effect of the codicil is, that has been settled in a series of cases, beginning with *Acherley* v. *Vernon* down to *Barnes* v. *Crowe*, and, lastly, in a more recent case of *Pigott* v. *Waller* [7 Ves. Jr., 98, 117]. The effect of all these decisions is to give an operation to the codicil *per se*, and independently of any intention, so as to bring down the will to the date of the codicil, making the will speak as of that date, unless indeed a contrary intention be shewn, in which case it will repel that effect. . . . The codicil draws the will down to its own date in the very terms of the will, and makes it operate as if it had been then executed in those terms." Such is the decision by the English courts, which at that time held that the will spoke from its date so far as real estate was concerned, and did not apply as to after acquired lands. In our own state the statute now regulates this, and surely the reason for its serving as a republication is all the stronger. Again: "It is unquestionably settled that adding a codicil brings a will to it, and makes it a will from the time of executing the codicil." *Murray* v. *Oliver*, 6 Ired. Eq. 55. In *Mooers* v. *White*, 6 Johns. Ch. 360, the court say that they see no reason why the codicil, executed with all the solemnities required by statute, was not a republication of the will so as to give effect to the devises, equally as if they had been mentioned in the codicil. In *Duncan* v. *Duncan*, 23 Ill. 365, 366, the court held that the proof of the codicil establishes the will without further proof. *Gray*, J., in *Hosea* v. *Jacobs*, 98 Mass. 68, in discussing the execution of a codicil, says a codicil ratifies and confirms the will, and gives it the same effect as if it had been written and executed at the date of the codicil, and cites *Brimmer* v. *Sohier*, 1 Cush. 133, and *Haven* v. *Foster*, 14 Pick. 534. In the latter case the court say that the execution of a codicil is a republication of

the will, so as in effect to incorporate the codicil with the will, and give to such combined instrument the same effect as if executed at the date of the codicil.

*Field*, C. J., in *Payne* v. *Payne*, 18 Cal. 302, decides that the will and codicil are to be considered as one instrument, and speaking from the date of the codicil and not of the will. *Lumpkin*, C. J., in *Jones* v. *Shewmake*, 35 Ga. 156, says the codicil republishes the will, and the effect of such republication is to bring down the will to the date of the codicil, and to make the will and codicil speak as of the date of the codicil. " A codicil is a republication and ratification of so much of the prior will as it does not revoke." *Gould*, J., in *Simmons* v. *Simmons*, 26 Barb. 75.

I might add that the doctrine of republication is given in the text books as fully established by the courts of the land, as 1 Wms. Ex. 251 sets down that a codicil will amount to a republication of the will to which it refers, whether it be annexed to the will or not, or be or be not expressly confirmatory of it; for every codicil is, in construction of law, part of a man's will, whether it be so described in such codicil or not, and as such furnishes conclusive evidence of the testator's considering his will as then existing. " In short, the will so republished is a new will." 1 Wms. Ex. 255. From the foregoing quotation, it would seem that the execution of the codicil served to republish the will, and if the will is not to date from the death of the testator, it can surely go no further back than the date of the codicil.

It must be considered then as a new will, and bearing date of January 7, 1878, *i. e.*, the date of the codicil. If it is republished and is to be treated as a new will, then of course the property must be treated as then existing,—the claim of the plaintiff being correct that the will is to take effect from its date (here January, 1878), which point we do not concede,—and the property would be divided as we claim it ought, viz., personal property to the two daughters, and real estate to the four heirs. Another consequence of a republished will being considered as a new will of the date of republication is, that its operation is extended to subjects which have arisen between its date and republication. 1 Wms. Ex. 257 ; *Brimmer* v. *Sohier*, 1 Cush. 118 ; *Haven* v. *Foster*, 14 Pick. 534 ; *Musser* v. *Curry*, 3 Wash. C. C. 481 ; *Jones* v. *Shewmake*, 35 Ga. 151 ; *Barker* v. *Bell*, 46 Ala. 216 ; *Harvy* v. *Chouteau*, 14 Mo. 587.

*R. M. Wallace*, for the plaintiff. The court, in a number of recent decisions, holds that the interpretation of a will is the ascertainment of the testator's intention, and that this is a question of fact, to be determined by the natural weight of competent evidence, and not by artificial and technical rules. *Rice* v. *Society*, 56 N. H. 197, 198 ; *Brown* v. *Bartlett*, 58 N. H. 511 ; *Kimball* v. *Lancaster*, 60 N. H. 273 ; *Bodwell* v. *Nutter*, 63 N. H. 448. In

this case the referee has found, from all the evidence presented to him, what the intention of this testatrix in this will was. No objection was raised at the trial, or is raised now, to the competency of any of the evidence heard. The referee, then, having from competent evidence found this question of fact, the testatrix's intention, and having reported the same to the court in his report, why does not that end the matter? What question of law is there or can there be raised in this case under these circumstances? Why is it not, like any other case where a question of fact is involved, when a proper tribunal has upon competent evidence decided that question, the end of the whole matter? The court, at the law term, does not decide questions of fact. *Fuller* v. *Bailey*, 58 N. H. 71; *Lefavor* v. *Smith*, 58 N. H. 125; *Whitcher* v. *Dexter*, 61 N. H. 91; *Cutting* v. *Tappan*, 59 N. H. 562; *Hall* v. *Nelson*, 59 N. H. 573. Why should a different rule be adopted in this case?

It is claimed that the testatrix, by subsequently selling part of the real estate she owned at the time she made this will, indicated a change in her intention in regard to the disposition of that much of her property under this will; that she did not wish to have it pass under the residuary clause, and that it indicates an intention on her part to revoke the will *pro tanto;* that, in order to sustain the referee's decision, it is necessary to consider personal property real estate,—that is, treat the proceeds of this real estate sold by the testatrix after the making of her will as real estate, in order to have it disposed of under the last clause of the will. I think the defendants are in error in this position. They treat this matter as though there was a specific devise of real estate, or as though the last clause of the will was incapable of disposing of anything but real estate. If that were so, there might be some ground for their position. But when we see there is no specific devise of real estate, and that the last clause of the will, instead of being restricted to disposing of real estate, is a sweeping residuary clause, capable of disposing of both personal and real estate, this whole objection is at once disposed of. The conveying of part of the real estate by the testatrix after the making of the will, with such a residuary clause as is in this will, does not indicate any change of intention on her part in regard to the disposition by her will of the proceeds of the real estate so conveyed. Nor does it indicate the revocation of her will *pro tanto*, because she was perfectly aware that the proceeds of this real estate, being in personal property, could pass equally as well under this residuary clause as the real estate itself. For the same reason it is not necessary to treat the proceeds of this real estate, thus conveyed, as real estate, in order to sustain the referee's decision.

Another position of the defendants is, that the making of the codicil January 7, 1878, twelve or thirteen years after the making of the will, and after most of the real estate which the testatrix

owned at the date of the will was converted into personal property, republished the will as of that date, and so makes it certain that this personal property would go to the daughters under the first clause of the will. Our position, that the first clause of the will was intended to dispose of only furniture and wearing apparel, and other personal property of like nature, and that the general terms used in this first clause are limited in their meaning to articles *ejusdem generis*, the reasons for which we have heretofore presented in this brief, if correct, removes this objection.

The republication of the will republishes the original intention, which was to give her wearing apparel and furniture, and articles of that nature only, to her daughters, by the first clause, and all the residue of her property, both real and personal, equally to her heirs by the residuary clause. It would not make the words used in the residuary clause "it now being in real estate," and which were simply descriptive of her estate at the date of the will, speak as of the date of the codicil. The word "now" in a will refers expressly to matters and things as they existed at the date of the will. 1 Jarm. Wills 318; 1 Redf. Wills 380, *ss.* 3, 7.

CLARK, J. The question in this case arises from a change in the condition of the property after the execution of the will. There is no evidence of any change in the relations of the testatrix and the residuary legatees to indicate or account for an intention on her part to change the apportionment of her property between them. The evidence of a change of purpose in its distribution is furnished solely by the fact of a sale of a large portion of her real estate by the testatrix, and allowing her will to remain unchanged. It is not reasonable to believe that the testatrix, without cause, intentionally changed the disposition of her property so materially as to reduce the shares of two of the residuary legatees to one fourth of the amount provided for by the will, as the property then was, with a corresponding increase to the shares of the other two. The absence of evidence showing a motive for changing the operation of the will upon the property, is evidence upon the question whether any change was intended by the testatrix.

It is to be assumed that the testatrix understood the terms and conditions of the will and their legal effect when it was executed. Its provisions, applied to the property at that time, show an intention to divide the bulk of it equally between the four residuary legatees named in the will. Her property then consisted of real estate of the value of twenty-nine hundred dollars; her wearing apparel, household furniture, and like property, which she was then using in her daily life; and a note against a son-in-law for about forty dollars. The will provides that the wearing apparel, household furniture, and personal property of every name, nature and description, be equally divided between the two daughters; that legacies of two hundred dollars each be paid to two grandsons,

and a nominal legacy to a son; and that the rest of the property, it now being in real estate, be equally divided between the two daughters, the plaintiff, and a grandson. By the subsequent sale of a large part of the real estate it was converted into personal estate, and consequently transferred from the operation of the residuary clause to the special bequest to the daughters, unless the words "personal property," as used in the bequest to the daughters, are understood as used in a special and restricted sense. The determination of the question raised depends upon the construction to be given to the phrase "personal property." If the language is susceptible of more than one construction, in what sense did the testatrix use it?

The interpretation of a will is the ascertainment of the testator's intention. That intention is gathered not only from the words of the particular clause under construction, but as well from the language of the whole will, from the relations of the testator to the persons who are the objects of his bounty, and from surrounding circumstances. *Kennard* v. *Kennard*, 63 N. H. 303, 310. But little aid is to be derived from a resort to formal rules, or a consideration of judicial determinations in other cases apparently similar. It is a question in each case of the reasonable interpretation of the words of the particular will, with the view of ascertaining through their meaning the testator's intention. *Robison* v. *Portland Orphan Asylum*, 123 U. S. 702, 707 ; *Bosley* v. *Bosley's Executrix*, 14 How. 390, 397.

The term "personal property," in its broadest legal signification, includes everything the subject of ownership not being land or an interest in land, as goods, chattels, money, notes, bonds, stocks, and choses in action generally. In the ordinary and popular understanding, however, it is frequently used in a more restricted sense, as including goods and chattels only, and embracing such movable and tangible things as are the subjects of personal use, and it is at least doubtful whether the term personal property is generally understood to include money, notes, and choses in action. In its popular meaning it is commonly applied to goods and chattels. It is sometimes used in wills with similar import, as where a testator bequeathed to his wife "five hundred dollars in personal property such as she may select." *Wallace* v. *Wallace*, 23 N. H. 149.

The will furnished evidence that the testatrix understood and used the term "personal property" in this restricted sense. The language of the bequest to the daughters is "all my wearing apparel, household furniture, and personal property of every name, nature and description." In the construction of wills, as well as statutes, when certain things are enumerated, and a more general description is coupled with the enumeration, that description is commonly understood to cover only things of a like kind with those enumerated. This is because it is presumed the testator had only things of that class in mind. *Given* v. *Hilton*, 95 U. S. 591, 598.

By this rule of construction the words personal property in the bequest to the daughters are to be interpreted as embracing only things of like kind with those enumerated. *Benton* v. *Benton*, 63 N. H 289. If the language was intended to embrace everything except the real estate, the enumeration of the wearing apparel and household furniture was superfluous. A similar construction was adopted in *Dole* v. *Johnson*, 3 Allen 364, a case strongly resembling the case at bar, where the language of the bequest was "all my household furniture, wearing apparel, and all the rest and residue of my personal property," and it was held not to include money, stocks, securities, or evidences of debt.

The language of the residuary clause is, "And as to the rest, residue and remainder of my property, it now being in real estate, I give . . ." The use of the phrase "it now being in real estate" is significant as being descriptive of the property upon which the testatrix then understood the residuary clause was to operate, and as emphasizing her intention that the property which was then real estate should be equally divided among the four residuary legatees, whatever its form or condition might be when the will took effect. The words "it now being in real estate" carry a suggestion of a possibility that the property might not be in real estate when the will became operative at her decease, and show that she did not understand that by the bequest of personal property any part of what was then real estate would in any event be included. The use of this language was consistent in the view that the testatrix understood the bequest to the daughters as including only her wearing apparel, furniture, and articles of like kind which she might have at her decease. It was unnecessary and meaningless if she understood and intended the bequest to the daughters to include everything but the real estate.

The provision of the will authorizing the executor, for the better settling and dividing of the property among the devisees, to sell all the real estate of which the testatrix might die seized, and from the proceeds to pay the funeral charges and debts, erect suitable grave-stones, "divide my personal property between my two daughters as above mentioned," pay the money legacies to the persons named, and the expenses of administration, furnishes evidence that the testratrix understood that the personal property to be divided between the two daughters included only the wearing apparel and furniture, and goods of like character. It is evident from this clause in the will that the testatrix intended and understood that the residuary legatees should receive not land but money, and that the real estate, when converted into money by a sale, would not pass to the two daughters under the special bequest of the personal property to them.

The language of the whole will, considered in the light of the circumstances under which it was made, the condition of the property, and the relations existing between the testatrix and the resid-

nary legatees, indicates that the term "personal property" was used by the testatrix in the bequest to the daughters as embracing goods and chattels only, and not as including money and choses in action. In this view the sale and conversion of the real estate into money did not affect the disposition of the property under the will.

It is suggested that there is no question for the court in this case; that the interpretation of a will being the ascertainment of the testator's intention, which is a question of fact, and the intention of the testatrix being found by a referee, the court at the law term will not inquire into the correctness of the findings. Ordinarily questions of fact are not considered at the law term, but the fact of a testator's intention is ascertained by the interpretation of the will in the light of the surrounding circumstances, and the construction of written instruments being ordinarily a question of law, the finding of the referee is revisable by the court. The result reached by the referee, that the money now remaining in the hands or the executor should be equally divided between the four residuary legatees, is sustained.

*Decree accordingly.*

ALLEN, J., did not sit: the others concurred.