Carroll,
June 1, 1926.

### CHARLES F. SMART & a. v. SIMON O. HUCKINS.

A patent ambiguity in the description in a deed may be resolved by competent extrinsic evidence of the intention of the parties.

A subsequent statement of intention by one of the parties is not competent evidence against the other party or his successors in title.

In the absence of competent extrinsic evidence, a patent ambiguity in the description in a deed must be given the reasonable construction most favorable to the grantee.

TRESPASS, for cutting timber. Trial by jury and verdict for plaintiffs.

The plaintiffs own land in Effingham described in a deed from one Leavitt, a former owner, and given in 1869, as follows: "Beginning at the westerly corner of the door yard of John Leavitt by the road and running thence South about 52° West eight rods and twenty links to an old stump . . . thence South 30° West thirty-two rods

twenty links to stake and stones . . . , Thence North 84° West . . . to the check line of lot number Seven, thence South about 40° East to the corner of the lot one hundred eleven one half rods thence Northwesterly [northeasterly] on the range line to the road Thence by the road to the bounds commenced at, containing forty acres and seventy-eight square rods. . . . Also that part of lot No. 5 . . . lying between the Northerly and Southerly lines of the lot of land above described extending in a straight course to the Westerly check line of said lot No. 5."

The forty-acre tract is in lot 7, the westerly line of which is the easterly line of lot 5. At the time of Leavitt's deed he owned all but five acres in lot 5, and the defendant now owns the part not owned by the plaintiffs. In 1874, and less than five years after the deed, Leavitt mortgaged his land in lot 5 not conveyed by the deed, describing it as bounded "on the north by the line between the towns of Effingham and Ossipee; on the east by land of W. F. Chick; on the south by land of Ivory Welch; and on the west by Pine River, containing one hundred and twenty-five acres more or less."

In the description in the Leavitt deed of the area in lot 7 the course N. 84° W. and the range line, which are respectively the northerly, or a part of the northerly, and the southerly lines of that area are not parallel. The range line is at right angles to the easterly and westerly lines of both lots, and in its continuance becomes the southerly range line of lot 5. The course N. 84° W. if continued from its intersection with the easterly line of lot 5 across the lot gives the plaintiffs from thirty to thirty-five acres more than a line from such intersection across the lot drawn at right angles to the check lines and parallel with the southerly or range line of the lot. It is this thirty or more acre area that is in controversy.

Lot 5 contains in all two hundred acres or slightly more, and the part of it conceded to belong to the plaintiffs contains seventy acres or slightly more.

The defendant excepted to the denial of his motion for a directed verdict and to the admission of certain evidence. Transferred by *Branch*, C. J.

*Mathews & Stevens* (*Mr. Stevens* orally), for the plaintiffs.

*Thomas P. Cheney* (by brief and orally), for the defendant.

ALLEN, J. The case involves the construction to be given the words "extending in a straight course" in the Leavitt deed as mean-

ing at right angles to the check lines of lot 5 or as meaning in the same direction as the course N. 84° W., which forms either all or a part of the northerly boundary line of the land in lot 7 conveyed by the deed.

The submission of the construction to the jury, by the trial court, does not affect the merits of the motion for a directed verdict. What the deed means and its effect are questions of law or are to be treated as such, and they are accordingly presented here by the exception to the denial of the motion. "The interpretation of the deed is a question of law, in that it is reviewable by this court so that the finding of fact by the trial court as to the intention of the parties may be disregarded." *Emery* v. *Dana*, 76 N. H. 483, 486. The rule is no less to be applied because a jury rather than the trial justice made the finding. *Derosier* v. *Company*, 81 N. H. 451, 455, 456. It follows that whatever evidence was properly introduced at the trial in connection with the construction is before this court for consideration, whether it be of surrounding circumstances at the time the deed was given or of later acts of the owners in practical construction of the deed.

The deed itself seems equally susceptible of either of the constructions claimed. While the defendant rightly contends that a straight line is the shortest distance between two points, a straight course does not require the meaning of the shortest distance between two lines. It may be straight although diagonal. Maintaining the same direction throughout its course, it is a straight course. The boundary line claimed by the plaintiffs is just as straight as that claimed by the defendant. But because of the ordinary meaning of straight as most direct or shortest, the use of the word in the deed gives it a doubtful meaning. The southerly range line of both lots is admittedly continuous; there is nothing in the deed, however, to show whether the line in lot 7 described by the course N. 84° W. is to be extended from its intersection with the easterly line of lot 5 "in a straight course" across the lot by the most direct way or in continuance of the course. The plaintiffs argue that in the absence of altering language, "extending in a straight course" means "continuing in their courses," but since the words "in a straight course" ordinarily relate to shortest distance, language which may be altering appears. While the extension of a line in the science of mathematics may refer only to its continuance in the same direction, and even conceding this may be its usual meaning, yet a change in direction is not in general meaning inconsistent with extension. If

technically so, the deed shows no undertaking of technical description of the area in lot 5. If the words "in a straight course" had been omitted, the plaintiffs' argument would require adoption, but with them, an intention of shortest distance across the lot is at least as probable as one of extension in the same direction. Words are to be assumed to have a purpose, and since the words "in a straight course" are equally applicable to modify or to support the theory of continuance in the same direction, the deed itself offers no satisfactory solution of the doubt. If the words "in the same course" had been used in place of the phrase employed, their supporting weight would be decisive; and the failure to use them is at least sufficient to create an ambiguity calling for competent extrinsic evidence for such light as it may throw on the situation.

The northerly line in lot 7 described by the course N. 84° W. and about one hundred and eight rods in length is only a part of the northerly boundary of the land in that lot. Two other lines of about eight and thirty-two rods in respective length make up the rest of such boundary. If the reference in the deed to the northerly line of the land in lot 7 were construed to include its entire distance of these three lines, as opposite to the southerly line, a line across lot 5 parallel with its southerly line would require adoption, since the continuation of a line made up of three sections, each having a different direction, would be impossible of application, and extension by making the northerly line across lot 5 parallel with its southerly line would be the only alternative. But there is at best nothing in the deed from which it may be inferred that the entire northerly boundary was meant rather than the part of it which is greatest in distance and which runs to lot 7. There is hence again an ambiguity which the deed on its face does not resolve.

The extrinsic evidence which the record presents points out nothing of value to show what the deed means, unless as to one item. The deed shows that the land in lot 7 had been in part at least improved. It mentions buildings on the land, the boundaries are clearly defined, and the acreage is definitely stated. Lot 5 appears never to have been improved and never to have had much value except for the growth on such parts of it as are capable of sustaining growth. Much of it was heath land, and swampy except in dry periods. Where the land was elevated above the swamp level, the growth had value. A part of the disputed area is thus elevated, but this fact is indeterminative of a purpose to include it in, or exclude it from, the land conveyed. The evidence is not

satisfactory to show that any lines were run or bounds set by the parties, or that any agreement was made between them, by or from which the northerly line may be established.

The only evidence of any significance is the statement of acreage in the Leavitt mortgage, which is equivalent to a claim nearly contemporaneous with the deed of 1869 that his southerly boundary ran as the defendant now claims. To give him one hundred and twenty-five acres would limit the plaintiffs' acreage to about seventy, whereas to give the plaintiffs the disputed area would cut down the one hundred and twenty-five acres to ninety-five. The use of the words "more or less" does not militate against this claim. As meaning about or approximately, they denote Leavitt's understanding and claim of substantially the acreage stated. The character of the lot, which to this day has made walls or fences on it impractical, and the lack of a survey and defined bounds help to give the statement of variation of acreage its ordinary narrowed scope of limited rather than general indefiniteness. See 3 Words & Phrases, 2d ed., 446, 447. The statement of acreage would have an empty meaning if the qualification of "more or less" were construed to admit a variation of thirty acres either way from the stated number of one hundred and twenty-five. The variation is too disproportionate to be reasonable. When it is considered that lots in Effingham usually overrun their assumed acreage, the argument for a smaller acreage than that stated in the deed becomes still further weakened, since the approximating phrase in the light of that circumstance would more especially refer to increased rather than lessened acreage.

The competency of this evidence as the statement either of an owner or of one familiar with the land, when not available as a witness, to show where a boundary in fact is, is well settled. *Keefe v. Railroad*, 75 N. H. 116, and cases cited; *Morrison v. Noone*, 78 N. H. 338, 341, 342. Is it also competent, as evidence of intention, to show the requirements of a deed as to where a boundary should be?

The issue here is not of a disputed boundary. It is what the deed means. It is an application of the deed to the land, and not of the land to the deed. While the object of the inquiry is to determine where the boundary is, the inquiry itself is what the requirements of the deed are rather than what the situation of the land is. The line as claimed by Leavitt is the true line if the deed is to be construed as so giving it. Otherwise it is not. There is no difficulty in locating and establishing the line when it is ascertained how the

deed requires it to be run. The boundary is doubtful only because the meaning of the language of the deed is doubtful, and the problem is not how or where to establish bounds answering the calls of the deed but to say what the calls of the deed are. "What the monument is is determined by the deed, but where it is is a question of fact to be determined by the jury." *Coburn* v. *Coxeter*, 51 N. H. 158, 162. That the evidence would be admissible to show where bounds are is not a reason to make it competent to show where they should be.

While in a case of ambiguity " . . . it is the duty of the court to place itself as nearly as possible in the situation of the parties at the time the instrument was made, that it may gather their intention from the language used, viewed in the light of the surrounding circumstances" (*Weed* v. *Woods*, 71 N. H. 581, 583), yet the rule "that the construction of a written document is the ascertainment of the intention of the parties . . . does not authorize the use of evidence of matter not proper for consideration in the interpretation of a writing." *Lancaster &c. Company* v. *Jones*, 75 N. H. 172, 174.

The question being what intention was expressed by the deed (*Pillsbury* v. *Elliott*, 56 N. H. 422, 425), the parol evidence rule in its prohibition of the variation of the meaning of a writing ascertainable on its face, by showing an intention of the parties inconsistent with such meaning, does not meet the present inquiry. What is here sought is not to affect the force and effect of the deed, but to have its force and effect determined. The meaning of the deed being doubtful, parol evidence of a competent character is admissible to show the meaning. If the parties at the time the deed was given or afterwards had expressed their intention by act, and at least under some circumstances by word, what thus took place between them would be received in evidence, not to alter the meaning of the deed, but to resolve the doubt of its meaning. For such purpose evidence of acts and statements preliminary to the writing or in the course of negotiations (*Weston* v. *Ball*, 80 N. H. 275, 276; *Osgood &c. Company* v. *Claremont*, 81 N. H. 29, 33, 34), and of the conduct of the parties afterwards as a practical construction of the instrument (*Day* v. *Towns*, 76 N. H. 200, and cases cited; *Barker* v. *Company*, 78 N. H. 160, 163), is to be admitted.

But Leavitt's claim of acreage in his remaining land was an act or statement to which the grantee of the 1869 deed was not a party. There is no evidence that the latter knew of the claim, or that he in any way acquiesced in it. In the absence of such evidence

·Leavitt's claim becomes immaterial. *Heywood* v. *Company*, 70 N. H. 24, 33, 34. The understanding of the parties to the deed is hardly shown by the understanding of one of them. What one understood does not show what both understood. While the deed, coming from the grantor, contained his language, its acceptance by the grantee made the latter's understanding of equal importance. The real question is what the deed meant to reasonable men in the situation of the parties, and an intention of one not communicated to the other does not show what was thus meant. Mutuality was lacking. The deed was a bilateral transaction, and "in a purely bilateral transaction, the private sense of one party cannot be imposed upon the other party." 4 Wig. Ev., s. 2461. "The understanding which one party to a contract has of its meaning is obviously not evidence in his own favor, and against the other party, when the effect of the contract is in controversy." *Taft* v. *Dickinson*, 6 Allen 553, 555.

Also, as a practical objection, the admission of the evidence for purposes of construction "might permit a grantor to alter the boundary of the lot he had granted, to the injury of his grantee, by a subsequent act." *Barrett* v. *Murphy*, 140 Mass. 133, 141.

What is to be determined is the meaning of the deed, and not the parties' understanding of its meaning. What they in fact intended cannot control or affect the language used when its meaning is ascertained. The process of construction builds upon the language to develop the intention, and not upon the intention to interpret the language. The meaning of the language being established, an actual intention of a different meaning may not be shown except in an effort to reform the instrument. "The belief of the parties, as to the effect of the deed, could neither add to nor diminish its force." *Furbush* v. *Goodwin*, 25 N. H. 425, 456. Whatever may be the present state of the law in admitting evidence of the common intention of both parties to aid in arriving at the meaning of doubtful language, neither reason nor authority countenances the use of evidence of the intention of only one of the parties for such purpose. The objectionable character of the evidence to show intention seems to rest both on its doubtful relevancy and its inexpediency. Its incompetency is perhaps also fortified by the analogous rule by which, even in the case of unilateral instruments like wills, evidence bearing on the construction of a patent ambiguity is limited to acts and statements of the maker from which intention may be inferred, to the exclusion of direct declaration of intention.

The evidence of the Leavitt mortgage being accordingly incom-

petent in construing the deed, and the record showing no other extrinsic evidence satisfactory to explain the ambiguity of the language of the deed, the rights of the parties must be settled by resort to the rule of *contra proferentem*.  *Canning* v. *Pinkham*, 1 N. H. 353; *Bullen* v. *Runnells*, 2 N. H. 255; *Tenney* v. *Beard*, 5 N. H. 58; *Cocheco &c. Company* v. *Whittier*, 10 N. H. 305; *Clough* v. *Bowman*, 15 N. H. 504; *Nutting* v. *Herbert*, 35 N. H. 120, 125; *Richardson* v. *Palmer*, 38 N. H. 212, 218; *Sanborn* v. *Clough*, 40 N. H. 316, 330.

" 'Where all other rules of exposition fail' is a description (less appropriate now than formerly) of the situation of a case in which there is no preponderance of evidence in favor of either party." *Smith* v. *Furbish*, 68 N. H. 123, 128.  Such is the situation here. Broadened liberality in the use of parol evidence cannot be invoked when such evidence is lacking and there is nothing to show what the intention is as a matter of probability.  The case therefore calls for a construction of the deed to the disadvantage of the grantor. The construction is a reasonable one, and must prevail in the absence of evidence of a different one.

The case was tried on the theory that the construction of the Leavitt deed is decisive.  No claim of adverse possession or agreement of owners at any time since then to change the line as thereby established was made, and the case was submitted solely on the issue of the boundary between the parties as called for by the deed. To such submission the defendant did not object.  The evidence of a new line is not sufficiently convincing to hold that it was conclusively established, and the motion for a directed verdict on that ground was properly denied.

The result dispenses with consideration of the exceptions to evidence.

*Judgment for the plaintiffs.*

BRANCH, J., did not sit: the others concurred.