Strafford,
Jan. 2, 1934.

CHARLES H. PETTEE

*v.*

OMEGA CHAPTER OF ALPHA GAMMA RHO.

420

*Conrad E. Snow* (by brief and orally), for the plaintiff.

*Hughes & Burns* (*Mr. Hughes* orally), for the defendant.

PEASLEE, C. J.   The controversy is over the meaning of a deed given by the plaintiff to the defendant's grantor in 1915.   The description in the deed is as follows:

"A certain tract of land situate in Durham, N. H., bounded and described as follows, to wit: Bordering on and situated East of land conveyed March 23, 1915, to Frances L. Hewett by heirs of Horace Pettee.   Commencing at the southeast corner of said Hewett land thence northerly along said Hewett land about 127 feet to land of Horace Pettee Estate; thence easterly along the prolongation of the northerly side of said Hewett land about 37 ft. to a point 175 ft. from private way, west of said Hewett land; thence southerly about 129 ft. in a straight line to a point in the prolongation of the South line of said Hewett land 145 ft. from said private way, thence westerly about 20 ft. to the point begun at.

"Reserving the right for myself, my heirs and assigns to enter upon said land when necessary to repair or replace all water and sewer pipes now situated on said land doing no unnecessary damage."

The private way above referred to is Strafford avenue.

The description is plain upon its face.   It delineates a four-sided tract, lying easterly of and adjoining other land of the grantee and about 20 feet wide at its southerly end.   This interpretation is disputed, because upon an attempt to apply the deed to the land an inconsistency in the description becomes apparent.   The Scott corner, which is the admitted starting point and the southwesterly corner of the granted premises is 145 feet from Strafford avenue.   Hence, it is argued, as the deed calls for a southeasterly bound 145 feet from that avenue, the easterly line runs southerly to that point; and since it appears that this point is also the Scott corner, that part of the deed reading "to a point in the prolongation of the south line of said Hewett land" and "thence westerly about 20 ft. to the point begun at" is to be rejected as surplusage.

Manifestly, the deed contains inconsistent matter relating to the location of the southeasterly corner of the granted premises.   If it is only 145 feet from the avenue it is not on a "prolongation of the south line" of other land of the grantee.   Neither is it "about 20 ft.," or any other distance, from the point of beginning.   If it answers either of the last mentioned calls of the deed it is more than 145 feet from the street.

The problem for solution is, which of these inconsistent descriptions is to prevail.   As an aid to a correct interpretation the surrounding circumstances are to be taken into consideration.   The grantor

is a civil engineer and surveyor of long experience. Much has been made in argument of the mental processes and physical acts which entered into his formulation of the description in this deed. But all that is immaterial upon the issue here. Neither the thoughts nor the acts of one party, preceding the execution of a written contract and not known to the other party thereto, can be used to explain the meaning of the writing. *Smart* v. *Huckins*, 82 N. H. 342, and cases there reviewed.

It is evident that there is error in the description. But the origin of that error, so far as it lay exclusively in the mind of one party, is immaterial. Any surrounding fact, open to observation, or any thought expressed by one party to the other is to be considered for what it may be worth. There is but little that comes within this limitation which can be used in the present instance.

As to whether the parties went upon the premises and there determined the points to which the proposed purchase would extend, the evidence was conflicting, and the presiding justice made no definite finding. It is argued that the testimony upon this topic is now before this court for use in ascertaining the intention of the parties. This claim arises from the constant reiteration in many cases that a writing is to be interpreted with the aid of all the competent evidence. But this expression, competent evidence, has a definite limitation. It refers to facts which either are admitted, or when denied have been found to exist. Such facts, and such facts only, are the competent external evidence which may be used to aid in ascertaining the meaning of the writing. Upon the issue of their existence, the finding by the trier of the facts is conclusive. *Sandford* v. *Boss*, 76 N. H. 476; *Bell* v. *Woodward*, 48 N. H. 437.

Although this court ascertains the meaning of a document upon what is called all the competent evidence, its function does not extend to the determination of disputes as to the existence of explanatory facts which would be material if proved. No case has been cited or found in which this court has undertaken such a duty. So too, as far as has been ascertained, we have no reported case which was sent to the law court with a statement of the circumstances found at the trial, wherein such statement was not accepted as final, except instances where there was a question of the sufficiency of the evidence to sustain the findings.

It is true that there are cases, usually those involving the interpretation of wills, wherein testimony introduced in the trial court has been reported and considered here. In these, the truth of the testi-

mony has been assumed, and no issue has been made of the propriety of such procedure.

The only statement which has been found that could be thought to express a rule contrary to the foregoing conclusions is in *Borchers* v. *Taylor*, 83 N. H. 564, 567. The rule stated in *Emery* v. *Dana*, 76 N. H. 483, 486, that "the finding of fact by the trial court as to the intention of the parties may be disregarded," was there quoted with approval, and the following deduction therefrom was stated: "Hence whatever evidence was properly introduced at the trial in connection with the construction of the will is before us now for consideration," citing *Smart* v. *Huckins*, 82 N. H. 342, 344 as authority.

The conclusion there stated was correct as applied to the situation there involved, for not only was no issue made as to the propriety of considering testimony here, but the testimony reported had also, in effect, been found to be true by the presiding justice. Exception to the admission of the evidence was taken, and in transferring the case the presiding justice found alternatively on the issue of intent, according as the evidence should be held admissible or not. Of course the inevitable inference is that he believed what the witnesses testified to. And the interpretation of the will was finally based upon the language which it contained, the facts testified to being deemed of insufficient weight to affect the result.

In the *Smart* case it was said that all the evidence introduced at the trial was before this court for consideration. But that case was here upon exception to a refusal to grant a motion for a directed verdict. That depended upon the interpretation of a deed. That in turn depended in part upon surrounding circumstances, and proof of those depended upon evidence. The question presented was the conclusiveness of proof of facts which, if proved, might control the interpretation of the deed. In this situation it was of course true that all the evidence was before this court for consideration. It was concluded that "the evidence which the record presents points out nothing of value to show what the deed means," and the denial of the motion for a directed verdict was sustained.

At one period there was in current use a form of expressing the fundamental theory concerning the interpretation of writings which might be thought to indicate that a broader duty was imposed upon the law court. But the history of the law relating to the subject shows that such is not the true meaning of the language used.

The basic idea that a contract is to be interpreted in the light of the surrounding circumstances has been applied in this jurisdiction

from early times. Even while some technical rules for construction were still recognized, a use of illuminating facts, not inconsistent with the application of those rules, was considered to be permissible. A doubtful description in a deed should be read in the light of "the circumstances of the case." *White* v. *Gay*, 9 N. H. 126, 131.

The early English theory that words in a contract have a fixed and unalterable meaning, that "No man, in a document, could think himself entitled to mean what he pleased" (4 Wig., Ev. (1st ed.) *s.* 2462), was not adopted here. While the use of circumstances as aids to interpretation has always been recognized in our courts, no official statement of the nature of the process involved is to be found until 1875. At that time "The nature of such questions, and the ground of their decision, were made clear by Judge *Ladd's* restatement of the law of interpretation in *Rice* v. *Society*, 56 N. H. 191, 197, 198, 202, 203." *Doe*, C. J., in *State* v. *Hayes*, 61 N. H. 264, 330.

The question in the case there referred to was whether a second legacy, contained in a codicil, was cumulative. Recognition was given to the rule that *prima facie* it is so, and the issue was whether other features of the will overcame that so-called presumption. Much attention was given to the refutation of the claim that the presumption is conclusive, and to the nature of the duty of the court in the consideration of matter tending to negative the inference called a presumption.

The restatement of the law was in these words: "It requires no great acumen to see that this question is in its essence purely one of fact, in the decision of which it is only necessary to take care that incompetent evidence be not received and considered." *Rice* v. *Society*, 56 N. H. 191, 203. The evidence in that case was all contained in the will; and there was no occasion to treat the topic of what evidence may be competent, or how far the fact-finding duty of the court extends in such cases. It is beyond reason to conclude that the general and almost figurative language used was intended as a holding that the law court becomes the trier of subsidiary issues of fact in any case involving the interpretation of a writing.

Shortly after the rendition of that decision, however, the statement became current that "The question of intention is ordinarily determined as a question of fact, by the natural weight of competent evidence." *Doe*, C. J. in *Brown* v. *Bartlett*, 58 N. H. 511.

In the many cases wherein Chief Justice *Doe* restated this theory he consistently used the foregoing phrase or some equivalent therefor. The form of expression presents "a seeming confusion between evidence and facts." *Saloshin* v. *Houle*, 85 N. H. 126, 132. Its ca-

pacity to mislead was specifically called to attention in *Stevens* v. *Underhill*, 67 N. H. 68, 73, 74, and is evidenced in *State* v. *Railroad*, 70 N. H. 421, 423.

In the last cited case the referee based his decision upon a finding of legislative intent as matter of fact, and it was urged at the law term that the finding was conclusive. *Ib.* 428. A similar situation existed in *Bills* v. *Putnam*, 64 N. H. 554, 558, 559.

Other statements of the rule, by other judges, express the thought to be conveyed in forms less open to misinterpretation. "... the intention of the parties ... gathered from the instrument itself, from their situation, and from the subject-matter of the contract ...." *Allen*, J. in *Crocker* v. *Hill*, 61 N. H. 345, 346. "It is a question of intent, to be ascertained from the language of the instrument, the nature of the agreement, and from the circumstances of the parties." *Smith*, J. in *Hurd* v. *Dunsmore*, 63 N. H. 171, 172. The intention of a testator is gathered not only from the words of the will but also "from the relations of the testator to the persons who are the objects of his bounty, and from surrounding circumstances." *Clark*, J. in *Bills* v. *Putnam, supra*, 561. "The situation of the testator, the surrounding circumstances, his family and relatives, the devisees and legatees, the nature, amount, and situation of his property, facts tending to place the court in the position of the testator, constitute evidence competent for our consideration." *Parsons*, J., in *Stratton* v. *Stratton*, 68 N. H. 582, 586.

The use of the phrase "all the competent evidence" in so many cases has not unnaturally led to an erroneous conception of what was meant. " ... the denomination of the matters proper for consideration as competent evidence, or ... describing the making of the correct deduction therefrom as the weighing of evidence" is "language which has sometimes been misunderstood. *State* v. *Railroad*, 70 N. H. 421, 433, 434." *Lancaster &c. Co.* v. *Jones*, 75 N. H. 172, 174.

There has been an anxiety to emphasize on one hand the principle that writings are not always construed literally, nor upon the application of arbitrary rules, and on the other that a finding of governing intent by the trier of the facts does not prevent a review of that issue by the court of law. "The force of the rule lies more in the refusal to be bound by the application of arbitrary rules, than in the denomination of the matters proper for consideration as competent evidence." *Lancaster &c. Co.* v. *Jones, supra.* In the elaboration of these ideas the expression competent evidence has been freely used. The expression is correct only in the limited sense already indicated.

The material surrounding facts constitute all the competent evidence.

Against the comparatively rare instances where testimony has been considered here, there are to be contrasted the great number of cases involving the interpretation of writings wherein the facts have been found by the trial court and reported and acted upon in the law court. If it were the true rule that all the testimony adduced before the trier of facts is to be considered here *de novo*, it would follow that all these cases were dealt with upon an erroneous theory.

The argument here suggests that the foregoing conclusions set up a false standard of interpretation. Argument is advanced for reaching an ultimate conclusion directly from the conflicting evidence, without any decision as to the subsidiary facts which are in dispute. It proposes that such evidence be weighed directly as bearing upon the main issue.

Under this theory, if six witnesses each testify to a separate circumstance, any one of which would control the interpretation, and there is conflicting testimony as to the existence of each circumstance, the duty of interpretation would be properly performed by concluding that probably some one or more of the alleged facts existed, and construing the writing accordingly. Or, following the idea to its legitimate result, no conclusion at all as to the subsidiary facts need be reached, and the interpretation could be based solely upon the proposition that there was a variety of testimony on the subject, and upon the whole it was concluded that the meaning was thus and so.

No case is cited in which any such loose procedure has been adopted. Surrounding circumstances are to be considered, but a chance that they exist is not enough. Before they can be taken into consideration their existence must be found from evidence and upon a balance of probabilities. The duty of finding their existence must be performed by some one. The fact must be found if it is to be made use of. "The real inquiry is what the law is as to the assignment of an issue for decision." *Saloshin* v. *Houle*, 85 N. H. 126, 135.

It will not be denied that the ascertainment of the existence of surrounding circumstances is purely a fact-finding process, and of a nature to be classed with such issues in general. It is "an ordinary question of fact." *Saloshin* v. *Houle, supra*, 129. Its character and appropriate allocation are not changed because the facts so found are to be used in the ascertainment of the intent expressed in a writing. Nor is the rule that the ascertainment of intention is treated like a fact-finding process in any way limited or impaired by restricting the duty of the law court as herein indicated.

Undoubtedly the question of intention is for the court. It is equally true that all evidence tending to show material circumstances is admissible in the attempt to establish their existence. But the ascertainment of their existence is clearly and appropriately a function of the court to which the determination of issues of fact is generally committed.

It is nowhere suggested that the law court should hear the witnesses. But unless that were done the important element of their appearance would be lacking, if that court were called upon to find facts.

The phrase "a question of fact to be decided upon all the competent evidence" is not to be so construed and applied as to give countenance to an invasion of the province of either of our courts by the other. Although in a sense a question of fact, its ultimate decision rests with the law court. But while it is to be decided by that court upon all the competent evidence, there is no authority to review there the findings of the superior court as to the existence of material interpretative facts, nor to find the same from reported testimony.

This is the generally recognized rule. "The construction of all *written instruments* belongs to the Court. It may become necessary to hear evidence of the surrounding circumstances that fill out the meaning of the words, as well as of any local or commercial meanings attached to particular words by usage . . . ; and the ascertainment of this is for the jury." 4 Wig., Ev. (2d *ed.*) s. 2556.

Not only is this rule tacitly recognized in the many cases above referred to, but whenever any issue regarding it has been presented the decision has been in accord with the above quotation. In *Tilton* v. *Society*, 60 N. H. 377, 384, a question was raised as to the admissibility of evidence as to how churches in neighboring towns designated certain missionary societies. The court, by *Doe*, C. J., said: "There was a custom of contribution in other congregational churches than that at Littleton, of which the testator was a member. Whether it was too remote in place to justify an inference that it had come to his knowledge, was a question of fact to be determined at the trial term."

*Nashua Trust Co.* v. *Burke*, 84 N. H. 490, was a petition for advice, brought by a trustee under a will. The question was as to the meaning of a bequest. The bill alleged certain facts, and some testimony taken in the superior court was appended to the transferred case for "assistance to the court in the determination of the questions involved." It was there said: "This court has no jurisdiction to find

the facts in cases transferred from the superior court. *Coles* v. *Railroad*, 74 N. H. 425. It follows that the transfer of the evidence cannot affect the decision here." *Ib.* 491. This language was quoted with approval in *Saloshin* v. *Houle*, 85 N. H. 126, 129.

This is not a case where the evidence was transferred under circumstances warranting any assumption that the presiding justice found, or the parties agreed, that the testimony was true (*General Motors Acceptance Corporation* v. *Berry, ante*, 280; *Nashua Trust Company* v. *Burke*, 84 N. H. 490). The case was drawn in the usual and orderly way. The presiding justice stated the facts found by him which he deemed material, together with his conclusions therefrom and his order. It was transferred in that form. At a later date, and upon request of the plaintiff, the evidence was printed as an appendix. The preface thereto by the presiding justice negatives any inference that he deemed it a material part of the case he had transferred.

From the evidence so transferred it appears that one party to the original deed testified that the bound was not set, and the agent acting for the other party that it was set. Exploration after the controversy arose failed to disclose its present existence. The finding was that "the probabilities are that none was placed there, or if so placed, it has been removed." The parties have seen fit to submit their case without asking for a definite finding. It follows that there is nothing for our consideration as to this item. It does not appear that such a bound was placed, nor that it was not placed, and it is not within our province to decide that issue.

This leaves the case to be disposed of upon the language of the deed, plus the physical fact that the Scott corner is 145 feet from the street, together with occupation by the grantee up to the line claimed by her for some years.

It is argued that the evidence as to occupancy under the original deed is too meager to be of consequence. We are not here concerned with the weight of that evidence, and the finding of fact is positive. But if this fact were to be left out of consideration the plaintiff would not prevail. With this eliminated, and despite elaborate argument along more or less technical mathematical lines, we are unable to see any preponderance in favor of an interpretation claimed by the plaintiff rather than one favorable to the defendant. The case would present the naked question, which of two inconsistent items of description should prevail. As to that, the law is definite. The rights of the parties would be settled by "a construction of the deed to the

disadvantage of the grantor." *Smart* v. *Huckins*, 82 N. H. 342, 349.
There was no error in the decree entered in the superior court.

*Exceptions overruled.*

All concurred.

———————

ON MOTION FOR REHEARING. After the foregoing opinion was filed,
the plaintiff moved for a rehearing.

*Conrad E. Snow*, for the motion.

PEASLEE, C. J. It is now argued that because the thoughts, intent,
or understanding of one party, preceding the execution of a written
contract, may, under some circumstances, be used to apply or defeat
the writing, therefore it was error to conclude that in this case such
evidence was not admissible to aid in construing this writing.

As a basis for the position now taken by the plaintiff, the rules
given by the American Law Institute are quoted as follows. If, after
applying certain standards of interpretation the writing is ambiguous,
"the rules governing the interpretation of agreements which have
not been integrated are applicable." Restatement, Contracts, s. 231.
Those rules are: " (a) Where a party manifests his intention ambigu-
ously and neither party knows or has reason to know that the other
party may give a different meaning to the manifestation, it is given
the meaning in favor of each party that he intended it should bear;
the same rule is applicable where both parties know or have reason
to know of such an uncertainty or ambiguity; and (b) where a party
manifests his intention ambiguously, knowing or having reason to
know that the manifestation may reasonably bear more than one
meaning, and the other party believes it to bear one of those meanings,
having no reason to know that it may bear another, that meaning is
given to it." *Ib.*, s. 233.

These rules afford no ground for the present claim. They declare
that A may show his understanding if B knew that he had manifested
himself ambiguously and that A might understand B's expression as
he did. They also state that if neither, or if both, knew the expression
to be ambiguous, each may insist upon his own meaning. The appli-

cation of the first rule gives what may be called the innocent party a right to have the contract enforced according to his understanding of it. The second relates to instances where there is no more responsibility for faulty expression upon one party than upon the other. In such a situation the result is that there is no contract because mutual understanding is lacking.

Neither of these situations is presented here. The expressing here was done by the party who seeks to use his understanding to qualify it. He is in no position to claim the advantage given to one who acted upon the language of another.

If the deed were to be regarded as the mutual expression of thoughts of the grantor and grantee, the most that could be claimed would be that neither of them knew it was ambiguous. This would not give to either of them the right to impose his understanding upon the other; but merely to show that there had been no meeting of the minds, and hence no contract. The present proceeding is not one for rescission or reformation. The plaintiff's claim is that his deed should bear a certain interpretation. In this situation the rules quoted do not suggest any ground upon which he can use his understanding to affect the interpretation of the document. While these sections do not state in positive form that, except as therein detailed, the undisclosed understanding of one party is immaterial and therefore, inadmissible, in another section there referred to the negation is expressed. *Ib., s.* 71.

There is also in the present case the additional factor that the property has passed from the original grantee to an innocent purchaser for value, who was not a party to the original transaction.

A large number of New Hampshire cases have been cited, apparently with the idea that they in some way substantiate the plaintiff's claim. Nothing is found in any of them to warrant such a conclusion. None of them relate to an attempt by one party to impose upon the other an unexpressed view of the meaning of the language used. None suggests that such divergent, undisclosed understandings may be put in competition with each other to aid in solving the meaning of dubious language.

The statement in the head note to *Smart* v. *Huckins*, 82 N. H. 342, that an ambiguity "in a deed may be resolved by competent extrinsic evidence of the intention of the parties," is correct. But it by no means states or implies that the undisclosed intention of one party alone is such competent evidence. Such a perversion of the statement of the rule lies at the foundation of all the plaintiff's argument upon this question.

The claim is made that the construction of the deed in favor of the defendant would make the granted premises include part of a passage way in which the grantor had theretofore conveyed rights to one Weed. It is true that the premises so described include a part of the passage way, but the claim that rights therein had theretofore been conveyed to Weed has no foundation in fact. The Weed lot is on the opposite side of the tract bounded westerly by Strafford avenue and easterly upon the Madbury road. It is described as bounded northerly by "a proposed street 40 feet in width, now partially constructed," and a right is given to "use said proposed street and to use the alley way in the rear of said lot 20 feet in width." The alley and the proposed street join at the corner of the premises and lead directly to the Madbury road, upon which the lot faces. The locus lies southerly of the Weed lot and overlaps the alley way some distance below the Weed premises. It is evident that there was no grant to Weed of any rights in the alley at that point. It is therefore unnecessary to consider whether the fact that a grantor had theretofore sold and conveyed a part of the premises in question could be used as a factor turning the construction of his later deed in his favor.

It is again urged that the designation of the southeasterly corner as 145 feet from Strafford avenue is an item of description to be preferred over that which declares that it lies easterly of the Scott corner and that there is a line from it to the Scott corner which is a prolongation of the southerly line of other land of the grantee. It is said that the rule invoked is broader than the statement that monuments prevail over courses and distances, and that its only limitation is that what is more certain prevails over that which is less so. This is true, but we are unable to apply it as the plaintiff does. It is to be noted in passing that the item he relies upon is of the less preferred class as the rule is commonly stated. But all the items lack reference to any physical object as the southeasterly corner. Each of them states some fact as descriptive thereof. We are unable to see wherein one is to be preferred over another. The statement that it is 145 feet from the avenue is not more definite than that there is a line thence westerly to the Scott corner and that this line is a prolongation of the southerly line of other land of the grantee.

It is also urged that as a part of the disputed tract was not used by the original grantee, because it was low, it follows that it was of no value to her; and that since it is claimed to be valuable to the grantor, as part of a passage way, there is a legitimate inference that there was no intent to convey it. The argument overlooks essential facts.

This land was situate in the midst of a developing community. Whilst the first grantee might have no immediate use for land in the rear, which needed filling, it might prove valuable for use in connection with the granted premises as developments proceeded. Subsequent events show that it has already become so in fact. The sale was not for a day, but for all time.

Further argument is advanced upon the theory that if the interpretation adopted were applied to other parts of the premises the defendant would gain more land, to which it has made no claim. It may be that the defendant has such an unasserted right. Whether it has or has not does not affect the conclusion here.

*Former result affirmed.*

All concurred.