Belknap,
June 7, 1949, } No. 3833.

CHESTER L. SMART & *a.* v. REMBERT A. HERNANDEZ.

*Nighswander & Lord* and *Normandin & Normandin* (*Mr. Nighs
wander* orally), for the plaintiffs.

*Tilton & Tilton* and *Robert W. Upton* (*Mr. Upton* orally), for the
defendant.

BLANDIN, J. The plaintiffs' main argument is directed at the Court's finding that the defendant did not voluntarily resign and at his ruling that the plaintiffs did not take proper action under paragraph 12 of the contract to terminate the partnership prior to the filing of their bill in equity on July 31, 1946. The questions of fact presented a sharp conflict, the defendant categorically denying that he resigned or ever told anyone that he had or intended to do so, while the plaintiffs offered unequivocal testimony to the contrary. They buttressed this with such undisputed occurrences, taking place just prior to the alleged resignation, as the defendant's sale of his house, his shares in a local building and loan association and his resignation from the Laconia Rotary Club, to mention some typical examples. The defendant, however, offered a plausible explanation for each of these acts. He was living alone and had no one to care for his house; on a previous occasion while he was away pipes had frozen and burst causing him substantial damage since there was no one there to look after things; he sold his building and loan shares to buy Government Bonds; he resigned from the Laconia Rotary Club because a rule required that if he missed four successive meetings his membership must terminate and he had tried in vain to find a way to circumvent this rule. He also testified that he kept a building lot in Laconia, an account in a local bank, the keys to the Clinic and had left numerous articles in his office at the Clinic such as diplomas, certificates, etc. He introduced in evidence his letter of resignation from the Laconia Rotary the material parts of which read as follows: "I am leaving Laconia because of my health. It is my intention to return in the spring. I hate to leave the clinic most of all. What a fine group of men Chet has gathered together there." There seems no occasion to review further the voluminous evidence on this question. Persuasive and substantial as the testimony of the plaintiffs and their witnesses appears on the record, the Trial Court saw, heard and felt the impact of their assault on the defendant's position and decided that it fell short. The evidence was sufficient to warrant his decision.

He also found that the defendant left the Clinic because his eyes required rest and treatment and that neither in so doing nor in any other way did he violate the agreement. Although the defendant's trip to Cuba turned out to be a lengthy affair the Court found that it was necessary to preserve the defendant's health, that the other partners raised no objection to it when the defendant proposed it, neither asking him to resign, nor tendering him his share under paragraph 10, nor taking any affirmative action. There is no specific

clause in the contract covering this situation. In view of the nature of the agreement we believe the Court's conclusion on this point in the light of his findings, which are supported by independent expert evidence in addition to the plaintiff's own testimony, is correct. Considering the entire record we believe the plaintiffs' contention that the defendant's testimony was incredible as a matter of law and that the plaintiffs' version must be accepted cannot be sustained. *Romano* v. *Company, ante,* 404, and cases cited; *Wilson* v. *Bank, ante,* 113.

The question whether the letter of December 21, 1945 written by the plaintiffs' secretary and received by the defendant on February 3, 1946 complied with paragraph 12 of the partnership agreement and thereby effected the defendant's involuntary retirement from the partnership was ruled on adversely to the plaintiffs by the Trial Court. However, this being a question of the interpretation of a written instrument it is for this court to resolve. *Hogan* v. *Lebel, ante,* 95; *Brampton Woolen Co.* v. *Local Union, ante,* 255, and authorities cited; *Pettee* v. *Chapter,* 86 N. H. 419. Counsel has cited no decisions nor do we know of any sufficiently similar to the present case to furnish precedent. In construing paragraph 12 therefore our guiding principal is what the words "meant to those who used them." *Brampton Woolen Co.* v. *Local Union, ante,* 255, and cases cited. Applying this test we have no difficulty in holding it was the intent of the partners that "upon written notice" a member would "*immediately sever his connection*" (emphasis ours) with the clinic "in which event" he should be entitled to certain benefits. The material portions of the letter of the 21st read as follows: "I was sorry to learn . . . of your proposed separation from the Clinic. . . . However, . . . we . . . have decided that, with your philosophy of life, your interest as well as ours would be better served by making the separation a final one." While this is not the language used in paragraph 12 it is equivalent to it and was unquestionably plain written notice to the defendant that all the others deemed it desirable for the interest of the clinic that he retire and the fact that it failed to state correctly the benefits to which he was entitled does not invalidate its effect as such notice under paragraph 12. See *Couture* v. *Hebert,* 93 N. H. 378. The defendant understood the letter. This is apparent from his answer to the notice written to Dr. Perley in which he says "it appears by Dick's letter that I have been expelled from the partnership for breach of contract. 'Dishonorably discharged' so to speak."

We believe what the parties intended by paragraph 12 was to provide a simple, practical and above all a speedy method of separating

a partner for the interest of the clinic. This was essential even if the parties should not immediately agree to the proper execution of the provisions governing the rights of the parties after termination. Each partner was protected by the fact that it required an unanimous vote to oust him and by the financial benefits to which the agreement entitled him. To construe paragraph 12 as the defendant argues is to force upon the plaintiffs the very delays and uncertainties which all sought originally to avoid. See *Gill* v. *Mallory*, 80 N. Y. S. (2d.) 155. (Motion for leave to appeal or for re-argument denied, 81 N. Y. S. 2d., 279).

There yet remain things to be done after the notice such as "a continuance of his salary . . . for the further period of three (3) months from the date of such notice . . . ", which in the ordinary construction of such language would mean monthly payments, and it does not appear that the notice and tender of all the benefits to the defendant must be simultaneous. The plaintiffs were bound under the contract to give the defendant certain benefits and no reason appears why they should be enumerated in the notice. They could not force him to accept a lesser sum in full settlement and their futile attempt to do so cannot invalidate the notice. *Couture* v. *Hebert*, 93 N. H. 378. We hold therefore, that by paragraph 12 the parties agreed in effect that upon written notice such as was given here a member would *immediately* sever his connection with the firm and *upon* so doing would be entitled to certain benefits. In deciding that the notice was valid to end the defendant's membership in the firm we also hold that he is entitled to the benefits for which the agreement provided. These benefits are three (3) months salary at the rate of $11,000 per year, from the date the notice was received which was February 3, 1946. We fix the date of February 3rd because it seems unlikely that the parties intended the three months period to begin running until the ousted member knew of the intended separation, as obviously he could not sever his connection until he received notice. Paragraph 12 states plainly what he is to receive as salary and since his severance did not occur under paragraph 10 but under paragraph 12 the latter applies. Nor by virtue of paragraph 15 can this portion of the agreement be amended orally or by unadopted committee report. The last payment of salary to the defendant was on November 24, 1945 and he is entitled to his monthly salary at the rate stated above until May 3, 1946 or until three months after receipt of the notice. He should also receive the further sum of $12,000 representing his original capital investment plus his share of the reserve fund accumulated up

to December 31, 1945 amounting to $3,463.10. He is entitled to one-fifth (1/5) of the surplus acquired up to February 3, 1946 which will include $5,748.36 distributed on December 31, 1945. However, to determine the surplus in which he is entitled to share there must be subtracted from the total surplus what is to be paid the defendant in salary and all sums contributed by doctors not members of the original partnership up to February 3, 1946. In connection with this question of surplus it should be noted in the event of further proceedings before the Trial Court that evidence bearing upon this matter must be limited so as to be pertinent to the period under consideration. In addition to the above sums the defendant should receive the additional cash contributions which he has made since the original amount of $12,000, which were found by the Court to amount to $2,331.99.

The Court below allowed interest from the date he found notice was received by the defendant. Although we have decided the date itself erroneous there seems no reason to disturb the principle involved in the ruling. See *White* v. *Schrafft*, 94 N. H. 467, 473, and cases cited. We therefore hold that he is entitled to interest upon $15,463.10, one-fifth of the additional surplus and cash contributions, as defined above, since February 3, 1946, to be determined by the Trial Court together with interest upon his monthly salary as it has accrued to him.

This appears to be the limit of his benefits as the contract precludes recovery for personal property except his cash contributions.

Plaintiffs' counsel briefed no exceptions to evidence although he made reference to some in oral argument. They have been examined and none appear to be sustainable. Since we have upheld the Trial Court's decision that the defendant did not voluntarily resign or otherwise breach the agreement it appears unnecessary to consider the defendant's exceptions to the admission and exclusion of evidence which bore upon these issues. He has neither briefed nor argued any others and none of merit are found in the record.

Upon tender to the defendant of the total sum now due him, as determined by the Trial Court in accordance with this opinion, the defendant is to execute the conveyances and releases stated in paragraph 12 of the contract.

*Case discharged.*

All concurred.